I appreciate the court's consideration. This is an appeal from an adverse ruling from the Court of Claims. Due to lack of time, I'll get to the substance of this. First, a little background. I represent, I think it actually comes out to about 150 plus police officers and criminal investigators from the Navajo Department of Public Safety on the Navajo Reservation. Navajo Reservation encompasses four states, Colorado, Arizona, Utah and New Mexico. It's the largest reservation in the country, having the largest number of members. The claim is under the Tucker Act. I don't know if the court wants me to argue that this case does fit within the Tucker Act. It is in the pleadings. This is really the problem, isn't it? Whether the claim against the United States is the most appropriate way. When you were in the circuit and they brought up the question of whether the nation should have been a party, was there consideration given to joining the nation as a party and staying in the regional circuit, appreciating that in the Court of I understand your question, Your Honor. My response would be that I live in Phoenix, but I've had a The Navajo Nation did not get involved in this case for the fact that, to put it in simple terms that I could spend all day telling you, is that their experience is what they get or they win with one hand will be taken away with the other. Being involved in this litigation, it may well get them the rights and benefits under that contract, but the way the system is up there is, as I say, that winning on one case or winning on one issue, they feel that they would lose money on another end, on another issue. It's in the news right now that the president-elect of the Navajo Nation was successful in reducing the council members from 155 to 88. Now, there were different things done, and I believe lawyers hired and everything. The short of it is that of the 88, they brought criminal charges against the chairman for having spent the $150,000 that was incurred in the whole process of reducing the size of the council and the procedures and the lawyers that it took. So, no, I did make contact with them, but there was no interest, and there was a time also that the current attorney general at that time was leaving, and he also had higher political aspirations. So, I bring this in the... If they were a necessary party, is there something to be said for that in seeking performance of the arrangement between the nation and the secretary? Well, the provision that we are pursuing, Your Honor, is specific to the pay rights of the officers and criminal investigators in that provision of the entire contract. The tribe does and may have other These police officers have come forward because the provision in that contract is so clear, and yet it has not been abided by, and yet it has not been enforced, and the Navajo Nation has not taken it to enforcement because there is even before this, for the Navajo tribe, a mediation right, and I even propose that to the attorney general to allow us to proceed with this on a mediation basis, but it was not permitted or they did not agree to it. Well, it is clearly very complicated, but trying to understand within the scope of the jurisdiction of the Court of Federal Claims, they can indeed provide monetary relief when the United States has an obligation to the complainant that seeks relief, and so I could tell if the relief you were asking was for the United States itself from the treasury or the source of payments under the Tupper Act to pay retrospectively the difference that should have been paid directly by the Nation because of its contract, or to somehow oblige the Nation to increase the pay of the employees, and I guess I don't know if they have the authority to do that. I'm going to ask the government to advise on that point. This is to get to the point where one is in the appropriate form to have the issues inspected and adjudicated is probably a problem that you've been coping with for a while. I would cite the Court to the Carlo v. United States decision under the same Act, the ISDEAA. He was a contractor with a Sioux Tribe, and he ended up not getting paid for his work. He did not include, the Tribe did not participate in his claim against the United States. He pursued it on his own, and the Court of Claims recognized his claim, and it was resolved that way. So the Tribe in that case was not involved. But that was a retrospective payment, and I gather that the relief that you are seeking would be a significant change in the performance. Well, we'd be happy right now, Your Honor, for retrospective payment and see where it goes. And I'm not being facetious. I believe that the United States, if the Court rules that yes, the provision plainly means what it says, and these people are entitled to that pay, I can't envision the United States paying them what they should be paid up to this date, and then reverting back to a lower rate. So we are here up to the perspective, up to the present date on our claim, Your Honor. Whose obligation is it, just as, I don't mean with respect to the contract, but just on a day-to-day basis, whose obligation is it to pay these employees? The federal government gives the Navajo Nation a lump sum, and some of it is allocated for the... And the Navajo Nation then pays the employees. It chooses the amount to pay them, I take it? Correct, Your Honor. Right. So what is the obligation, the contractual undertaking by the United States, that the United States has breached here? Because I don't understand it to be the case that the United States was undertaking to pay these folks. The United States had contracted with the Navajo Nation. Part of that contractual undertaking was that the Navajo Nation would undertake to pay them in the following amounts, not that the United States undertook. Your Honor, in 19... Am I correct in the basic outlines of the contract? No. Okay? About 30 years ago, the Congress passed the Indian Self-Determination... Well, we're not getting into history. Tell me why specifically my three-part arrangement is inaccurate. Because under that act, Congress specifically and repeatedly stated, we are not changing our historical and prior statutory duty to provide these services to the Indian tribes. And what we are doing is we are allowing the Secretary to contract certain of these services, but it is not, and they repeatedly emphasized, it is not waiving, it is not abandoning their duty to provide that service. For example, in this act, there's a model contract, which is pretty much 90% plus of the contract that's at issue here. The model contract, and it specifies the qualifications, the training, the badging or service specialization of the officers, even down to types of report forms that need to be written. All standardization, and all of it comes back, they emphasize under 450F that the Secretary of the Interior has the duty to monitor these contracts and enforce all the provisions. And there are multiple provisions in there for different forms of enforcement. First of all, they employ what is called a contract... What's the breach by the United States? What has it done, setting aside the statutory duties, what in the contract has the United States failed to do, obligated by contract to do? In the United States model contract, provision 105.106, police officers and criminal investigators shall be paid at the same rate... It was the Navajo tribe. So why isn't the action against the Navajo tribe to be paid according to the contract? Because it was for the government to fund an adequate amount. And it's what is called under this... Under the contract, was there a breach of the arrangement under the contract to fund the program? Is that your argument? The department states they are paid, they are paying what they can. The Navajo Department of Public Safety, Your Honor, is one-third to 40% undermanned. The pay rate, starting pay rate is somewhere between 20 and 30% below what it should be to the comparable BIA. And as the years progress, that difference is higher and higher. Now, this is a contract between the United States and the Navajo Nation. But under the ISDEA, Congress said we are not waiving, we are not assigning, we are not contracting away our historical duties and responsibilities. The Secretary can enter into these contracts, but he has, under the statute, the duty to ensure that these provisions are enforced. There is a contract enforcement official that even has what are called technicians that go under the reservation and inspect to ensure that there is a police department there, there are police officers and there are cars and all that. The court did allow me limited discovery. The contract awarding official and the technician that I deposed, they said, yes, these people, these officers and criminal investigators are required to be paid at the same rate as the BIA. Yes, we agree with that. I said, what have you done to enforce it? Well, they told us they paid it. And I asked, well, what have you done to ensure? And nothing. The court would not allow me to get into, because the statute does allow for periodic inspection of documents and audits, but the court would not allow me to get into that area of discovery. But clearly, it is Congress. Congress' intent was that we are not assigning away our duties. We are not assigning away, here is the model contract that you are going to use. Here is the setup that you are going to have to enforce these terms, because remember, they are starting from scratch, these tribes, and you are going to enforce these different terms. You have the staff and everything set up for the enforcement, but plain and simply is that it was not enforced. There is no disagreement that they were not paid. The major argument is that these officers and criminal investigators are not third-party beneficiaries, but the provision is very clear. Criminal investigators and police officers shall be paid at the same or higher rate than their BIA counterparts. If that provision does not apply to these officers and criminal investigators, then to whom does it apply? And that is all they are asking for, is for that provision to be enforced for the secretary to enforce, to put into effect all the mechanisms he has and the authority he has to enforce these provisions. Congress specifically stated in the ISDEA that the amount paid would be at the secretarial amount, and that was interpreted in the statute as the amount the secretary would have incurred had he had to perform the police services on the reservation himself. That would have been using BIA officers and, of course, being paid at the BIA rate. And so what we have is just a great contrast. Now, a very legitimate question as to why the Navajo Nation is not here, but as I said, it is perhaps one of the biggest curses the government ever gave to the Indian tribes was for them to model their government after ours. There is a lot of politics there where if someone makes a move, say for example in this case, that they do expand, and the attorneys there are not as sophisticated, they expand a couple hundred thousand dollars fighting this. And if they do lose, that becomes a very big political issue that you wasted these hundreds of thousands of dollars that we could have used on something else, not looking at the merits or the purpose or the intent. That is just the way things are there. It is a different culture. Difficult questions. Let's hear from the government. Thank you. May it please the Court. The fundamental fact to remember in this case is that the plaintiffs are bringing suit not as Native Americans themselves, nor as a Native American tribe, but as the employees of a Native American tribe. Simply put, they are the employees of a government contractor. Because consistent decisions, both from the Court of Federal Claims and then from this Court, have held that employees of a government contractor are not third-party beneficiaries of the contract itself, we ask this Court to affirm the decision below. But we do have the intervening contract between the Secretary and the Nation, and the concern about performance of that contract. What forum is available to right whatever wrongs may be existing in the performance of that contract? Although I am not an expert in tribal law, there is the existence of something known as the Tribal Court that can adjudicate disputes brought against the Navajo Nation. But the United States does, obviously from the legislation which was enacted, which transferred this function to the Nation, whereas it was before that a direct function of the United States. So that the United States is not excluded, and so this doesn't seem to be entirely insulated from the United States, and so be a matter of the Tribal Court. The United States does contract pursuant to the Indian Self-Determination Educational Assistance Act, and that's the way it does fulfill its duties. Now it's true that, pursuant to the Indian Law Enforcement Reform Act, that the United States does retain the responsibility for overall law enforcement. The Indian Law Enforcement Reform Act specifically contemplates that the United States can fulfill these duties through hiring the Navajo Nation and other Indian tribes to fulfill those duties. So, with respect to your question about whether or not this would necessarily force the United States to have its rights adjudicated by the Tribal Court, we do not believe it would. The United States is performing under the contract. There are, in the contract and elsewhere, ways for the Indian tribe to force the United States to give it more money. Specifically, pursuant to the model contract and then the annual funding agreement that attaches to every statement of work, it is required that if the Navajo Nation does not feel that it is getting sufficient funding to pay their offices at the required rate, they can in fact go complain to the Secretary. But that question hasn't been raised, has it? That the reason that these employees are being paid less than the comparable rate is because the funding is inadequate? That has not been raised, no. Okay. The Navajo Nation has chosen not to assert that. In the Court's opinion, on pages 413 to 414, the Court quotes extensively from the contracting officer and then as well as from the administrative officer and their technical representatives and their interlocutories and their depositions. There, they say that they have been monitoring and in their belief that it is being complied with and that all the funds that the Navajo Nation is entitled to, they are receiving. Okay. Now, you argue in your briefing here that this is a problem that's best characterized as a third-party beneficiary-type problem. But suppose that there were no third-party beneficiary clause in the contract and suppose that it was about as clear as it could possibly be that the payments that were made by the United States to the Navajo Nation were specifically intended to be paid in part to employees of the Navajo Nation for whatever purpose. There still wouldn't be an action, would there, against the United States if the Navajo Nation didn't make those payments? That is correct, Your Honor. But that's not a third-party beneficiary problem. It's a wrong defendant problem, isn't it? That is correct, Your Honor. So I'm having trouble understanding why this case, in your view, turns on third-party beneficiary law as opposed to simply saying, why are we here and why are we the defendant instead of the Navajo Nation? Well, third-party beneficiary was how the case was initially framed when the complaint. The case was then transferred to me. As we note in footnote 5 of our brief, we do say there is a potential standing issue where the wrong occurs because of the independent action of another. Finally, we would point this Court to this Court's recent decision, unpublished. Sullivan. Sullivan, yes, Your Honor. Exactly. If I could focus. Let me put you to the test. Let's just assume that these employees are not being paid the rate which the contract between the United States and the nation says they should be paid. That is the same as other BIA employees. Where is there a possible remedy for what, let's postulate, is a breach by the nation of its obligation to the United or as imposed by the United States? Assuming that is the case, that is the hypothetical, I would first state that there may be a remedy in the tribal court, although I am by no means a tribal lawyer in any expertise. Secondly, if the administrative officers, technical representatives, were to uncover evidence that this was the case, the United States does have the right under the Indian Self-Determination Act to either suspend or cancel the contract. And the hope is that the threat of the suspension or the cancellation... But how can that be brought forward to their attention? That is, here we are. Here is the court. What goes to court is a last resort. It is expensive. It is time consuming. You don't know how it is going to come out. So here we are with the reasonable presumption that we are a matter of last resort. Is there no remedy if there is no voluntary intervention on the part of either the United States or the nation as a nation? I believe that there may be a remedy in the tribal court, but other than that, we are not aware of any remedy against the United States. I must confess I am not as intimately familiar as Mr. Fitzhugh with the district court litigation that commenced in the District of Arizona and then went to the Ninth Circuit. That was summarized in Snyder v. United States in the Ninth Circuit opinion there. I am not quite sure if they could not join the Navajo Nation in that suit, if it was a matter of the Navajo Nation refusing to waive its sovereign immunity, or whether there were other issues, to which Mr. Fitzhugh alluded, that prevented them being added as a defendant in that case. Well, I must say my sense matches yours is that that was where the nation should have been a party, but there must have been a reason that we don't know. I don't want to have deferred us with that. We still have the question of a contract to which the United States is a party, which, according to the complaint, is not being complied with by the nation. And that, of course, contracts to which the United States is a party is the business of the Court of Federal Claims. That is correct, Your Honor. The Court of Federal Claims does handle contracts to which the United States is a party, and under certain circumstances what this Court has deemed the exceptional privilege of third-party beneficiary status may be conferred upon a party who is not in privity with the United States. If I could turn for a second to the assertion in the plaintiff's brief, their first argument, that there is, in fact, money mandating provisions pursuant to either the Indian Self-Determination and Educational Assistance Act or the Indian Law Enforcement Reform Act. There is not. The only provisions within the Self-Determination Act which relate to employees of the Native Americans are 25 U.S.C. 450-F, which states that the employees of the tribe are deemed federal employees solely for purposes of the Federal Courts Claims Act when a suit is brought against the tribe for something that has been done. The only other provisions relate to federal employees who then choose to become an employee. They are allowed to keep their health plan. And then the final provision simply states that tribal employees are permitted to make benefit determinations as well as receiving government rates for supplies. So under the FTCA provision, I take it that if one of the employees of the tribe should run over somebody in his car or something, then the United States would be substituted or would be suable as the defendant in that case? Yes, in the district courts. In district courts. Yes. We would also emphasize that a similar reasoning applies to our argument regarding the Indian Law Enforcement Reform Act. There, once again, there is a waiver for the FTCA, and the tribal employees are also deemed federal employees for purposes of the Ethics in Government Act and for enhancement of penalties if one of them should be assaulted. They also cite three regulations. These regulations are also not money mandating. Two of them, 25 CFR Sections 12.33 and 12.64, specifically relate solely to employees of the Bureau of Indian Affairs and thus do not relate to employees of the Navajo Nation. The third one, 25 CFR Section 12.34, is the one that does state that the clause that is at issue here, that they should be paid at the same rate as BIA officers, should be included within the Statement of Work. However, this, as the judge correctly held below, this regulation does not permit damages against the United States. It has no mechanism for enforcing it and does not give rise to the reasonable inference. I believe that we have adequately discussed the issues regarding third-party beneficiary law. If I could, I would just like to direct this Court's attention to this predecessor's Court's decision in United Electric Corporation of the United States as well as the Court of Federal Claims' decision in Acousti. In those two cases, third-party beneficiary status was denied to a subcontractor who had not received payment from the prime contractor and then discovered that the prime contractor, in contravention of its contract with the United States, had not carried an adequate bond pursuant to the Miller Act. In both those cases, this Court and the Court of Federal Claims held that there was not a third-party beneficiary. I'd also direct this Court's attention to the Christos case from the Court of Federal Claims, which held that even with a specific mention of an employee within a government contract, even then the employees are not third-party beneficiaries. If I could briefly address the points raised by Mr. Fitzhugh. The issue was raised about what exactly would be the enforcement, what is it that the United States failed to do, and as we briefly noted in footnote 6 of our brief, if the United States were to start enforcing this, there is no guarantee that Mr. Fitzhugh's plaintiffs would benefit. If we cancel or suspend the contract, we then start fulfilling our obligations to provide law enforcement and criminal investigation services to the Navajo by using federal employees with the Bureau of Indian Affairs. I would just also like to emphasize that you were correct, Mr. Bryson, that the contractual arrangement is the United States pays the Navajo Nation the money it would have otherwise used to provide the services. The Navajo Nation then goes out and provides these services independently. We would also just like to emphasize that the model contract, which can be found at 25 U.S.C. 450 L, subsection C, doesn't have the pay provision at issue. The only pay provision within the model contract that is in the statute states that relates to the United States paying money to the Indian tribe and what the Indian tribe should do should the United States fail in its obligations. The agreement between the United States and the tribe was that they would be paid the same as the BIA was paying for these services elsewhere. Isn't that accurate? That is correct, but I would like a chance to qualify that. The statement within the statement of work does say that the employees hired by the Navajo Nation shall be paid at the same rate as BIA employees. However, the statement of work is just a single document that encompasses the contract. More important than the statement of work, there is also the model contract, which is attached to each one of these 638 contracts, in addition to the annual funding agreement. Once again, I could direct this Court's attention to pages 413 to 414 of the opinion below. There, the judge discusses, or it is discussed, I believe when she is quoting from the interrogatories, the interplay between these different documents and that, in fact, the annual funding agreement permits the Navajo Nation to have set its own policies and, to some extent, its own pay scale. And so there is an interplay between all of those documents. It doesn't permit them to depart from that provision, but I think we all share the concern as to what the appropriate forum is to bring that issue into the fore. We do share that concern, Your Honor. The United States is pretty clear that it's not the Court of Federal Claims just because we are not the ones who are actually breaching the contract, even assuming the truth of the allegations. As Mr. Fitzhugh made reference to, he did have a chance to take discovery, and he did depose and did serve interrogatories, in addition to receiving all of the documents at issue. And at least according to those documents, the United States believes that these contracts are being honored. And that was what the awarding official thought, and that's what her technical representative also thought. Unless the Court has any further questions? Any questions? Okay. Thank you, Mr. Brennan. Thank you. Mr. Fitzhugh. Thank you, Your Honor. If the United States believed that these officers were being paid at the rate they were supposed to be paid, then we would not be here today. The money mandating provisions, Your Honor, we would say, is that in the ISDEA, there is, again, that I refer to what Congress defines as the secretarial amount. What it would have cost the Secretary to have provided those services on the reservation if it didn't do the 638 law enforcement contract. There is the money. There is the money, and there is the money that the BIA is saving by not manning it with the BIA personnel, paying at the rates that they should pay. Just jumping around a little. Another part, too, is that 2801 and 2802, I believe, is the Indian Division of Indian Law Enforcement Services. They have all these entities under their jurisdiction, including these officers under this 638 contract, and have the duty to ensure that these provisions and these standards, which would be pay, are also complied with. So here is yet another entity that has that duty but doesn't enforce it. Now, if the United States did contract away its duty, which I'll move back a little bit here, several years, some years ago, the assistant to the Secretary of the Interior sent a letter to Congress where it was proposing changes, and he was addicting to some changes, but referring back that we do have our traditional duty and continuing duty to monitor and enforce the provisions of these 638 contracts. That's not really referred to in the decision of the court. The decision of the court also focuses on the answers to interrogatories that were submitted by the contracting agent and the official and the technician. Well, not reflecting on counsel, but these were more of a technical answer and everything. In the depositions, they told me flat out, yes, looking at the provision, they're supposed to be paid at that same rate. Did you do anything to ensure that they were paid at that same rate? No. And just a flat out no. But it must be clear from this discourse, our concern here is whether, in fact, we are the appropriate court and the Court of Federal Claims will have the authority to intervene in the complexities that you've explained to us, or whether, in fact, you were in the right court with the district court and the Ninth Circuit, but with the problem, as they spotted, that the nation was not a party, voluntary or involuntary. Well, they have no jurisdiction over the Navajo Nation, and then if you go to Navajo Court, the Navajo Court has no jurisdiction over the other signatory, the United States. So, yes. But it's no complaint that the United States is not providing the funds that would be appropriate if the pay rate were correctly administered, as I understand it. Well, the complaint is that the United States is not fulfilling its statutory duty to enforce these provisions. Okay. But that's different. It is not different from saying the United States has not provided the funds that it obligated itself to provide. Here again, I could not look at the funding and the auditing, Your Honor. I will tell you that I do know the assistant and sometimes head of the police chief. They are one-third to 40 percent under banned. They are paid very badly because of the high unemployment rate. They are 175 to 225 miles from a large city that they can take their expertise to another place. They would move themselves and their family and their culture to another city. And it is very, very difficult to make that change. And they are paid at this lower rate because both the Navajo Nation and the United States recognize that they will get people, qualified people to apply and take these jobs, even though I didn't discover this. The officers know this. The officers have seen the contracts and said we're not being paid the rate that we are supposed to be paid. How is it that they have a whole structure to enforce these provisions? The letter to Congress from the Secretary of the Interior saying we have the duty to enforce these provisions. There's Congress that allocates an amount, the secretarial amount. You're going to spend the same as it would be to man it with BIA employees, and yet it does not get done. And that I think the police officers either are properly here before the courts to get that relief. It can't be some kind of runaround like in the district court where they had no jurisdiction over the Indian Nation and then the federal government files a Rule 19 saying lack of necessary party and boom, you're out. Can't go to tribal court because there's no jurisdiction over the United States. Are these people without a remedy? Isn't it basic law that if there is a right, there is supposed to be a remedy? To the extent that your claim is that there is a statutory obligation by the United States to enforce contractual arrangements as to which the United States is not technically in breach of the other parties, but nonetheless to enforce contractual arrangements that the United States has made with another party. It seems to me that that is the kind of action that would come up as a mandamus under the APA in a district court, and you would need to have the Navajo Party. Well, Your Honor, in 1986 you were directly suing the United States seeking an injunction, a mandamus order, saying enforce, comply with your statutory obligations of enforcement. Now, it may be that the court would say there are no such rights or that the rights are not sufficiently specific that they would be subject to a court order, but that's just on the merits. It would seem to me that's the way you're describing the obligation at this point. It sounds like something that would fall under a mandamus. Wouldn't it be an issue of standing also that they would not be signatory to the contract? Well, it wouldn't be a contract right at that point. I was referring to the statutory. You referenced the statutory obligations for the United States to be enforcing rights that ultimately are rights of individuals. Yes, Your Honor. One other thing that I would like to point out is that in, I believe, 1996, the head of the BIA and the head of the FBI entered into a memorandum, and it was basically kind of the overlap of law enforcement because the FBI does have primary jurisdiction on what used to be called major offenses on the reservations. And in that memorandum, short one-page memorandum, at the bottom it states that they will ensure that the officers, the 638 officers involved in the operations between these two entities, will be paid at the BIA rate, recognizing this provision in the 638 contract. Now, the judge in the court of claims said, first of all, that's dated, although the law hasn't changed since then. And then secondly, there is a provision in there that says this does not create a cause of action. And we did not cite it as a basis for our cause of action. We cited it as the intent or the knowledge of these directors of these two different entities, knowing that this rate of pay is required by law. And so it's all around, except the basic fact is that there's even an enforcement department, but it just does not get done. And as to say the Navajo Nation should come forward and do something, Your Honor, you don't see a lot of litigation from the Indian tribes because of the expense and because, as I say, and I have seen that, where they are forced to give with one hand, they give away from the other. BIA presents to the Indian tribes that we only have a certain amount of money for you. So if there's more that has to be paid in this one area, we're going to have to find a cut in some other area. And that was not Congress's intent. Congress said you are supposed to man it and run it and pay for it the same way as if you had BIA officers there. And as I said, there's no argument from the government that these officers are very, very low paid compared to their BIA counterparts. Thank you, Your Honor. Thank you, Mr. Garcia, Mr. Bowen. The case is taken under submission. Thank you.